# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL VORAVONG, | 1:10-CV-00141 OWW GSA HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| M. McDONALD, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, Hon. Edward Sarkisian presiding, following his conviction by jury trial on August 6, 2007, of unlawful possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)), carrying a concealed weapon on his person (Cal. Penal Code § 12025(a)(2)), carrying a loaded firearm (Cal. Penal Code § 12031(a)(1)), and resisting, delaying or obstructing a peace officer (Cal. Penal Code § 148(a)(1)). Allegations that

---

[1] This information is derived from the state court records lodged by Respondent with his response and is not subject to dispute.

Petitioner had suffered a prior serious felony conviction and that Petitioner had served three prior prison terms for felony convictions pursuant to California's Three Strikes Law were found to be true. Petitioner was sentenced to serve a determinate term of four years in state prison.

Petitioner filed a timely notice of appeal. On December 1, 2008, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA") affirmed Petitioner's judgment in all respects. He then filed a petition for review in the California Supreme Court. The petition was summarily denied on March 11, 2009.

On December 28, 2009, Petitioner filed the instant federal habeas petition. He claims he was denied his constitutional right to a fair trial based on juror misconduct and bias. On May 12, 2010, Respondent filed an answer to the petition. Petitioner did not file a traverse.

**STATEMENT OF FACTS**[2]

*Facts*

> On April 13, 2007, City of Fresno Police Officers Justin Hoagland and David Fenstermaker, responding to a complaint about a loud party, arrived at an apartment complex in Fresno. The complex was located in a "high ... crime" area.
>
> The officers, who were both in uniform, parked their patrol vehicle and walked into the complex, where they observed appellant and another person standing near a fence; appellant and his companion appeared to be urinating. Officer Hoagland shone his flashlight on appellant, and appellant, who appeared to be startled, quickly began pulling his pants up. At that point, Officer Hoagland said, "Don't run, police[,][s]top, police," or words to that effect, but appellant and his companion ran off into a field.
>
> The two officers gave chase, with Officer Hoagland in the lead. Appellant, at a point approximately 10 to 15 feet from where he began running, stopped and dropped to one knee. His left hand also went to the ground. Appellant then "pivoted" and ran off in a different direction.
>
> At the point appellant went down on one knee, Officer Hoagland could not tell if appellant simply stopped on his own accord or if he tripped and fell. Officer Hoagland was approximately 10 to 15 feet from appellant; it was dark; and there was no lighting in the field, aside from the light coming from the apartment complex. Officer Fenstermaker, who was behind his partner, did not see anything in appellant's hands. Officer Hoagland testified that "[i]t appeared ... [appellant] may have been discarding an item." The officer testified further, "It has been my experience that whenever there's an action like that from a subject I'm chasing on foot it's pretty consistent that the subject is discarding some kind of contraband," such as a weapon or drugs. Officer Fenstermaker testified, "It appeared that [appellant] was placing an item down on the ground with his right hand."

---

[2] The Fifth DCA's summary of the facts in its December 1, 2008, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

When appellant pivoted and ran off, Officer Hoagland continued to pursue him, shouting at him to stop. Appellant abruptly stopped running. Officer Hoagland yelled out to appellant, directing him to show his hands. As the officer approached appellant, he (the officer) still could not see appellant's hands and, fearing that appellant had a weapon, the officer struck appellant in the face with his forearm and forced him to the ground. Appellant offered no resistance, and Officer Hoagland was able to handcuff him.

At that point, Officer Fenstermaker approached, and Office Hoagland saw appellant's companion jumping over a fence in another part of the field. Officer Hoagland directed Officer Fenstermaker to go after the second person. Officer Fenstermaker subsequently apprehended that person, a juvenile.

Approximately two minutes after taking appellant into custody, Officer Hoagland walked back to the spot where appellant had dropped to one knee. There, in some tall grass, he found a loaded semi-automatic handgun. Officer Hoagland testified there was "nothing on [the gun]." Although the grass was "slightly moist" with condensation, the gun was dry and had no rust "that appeared to be from ... any kind of moisture," and no grime or grass on it. Officer Fenstermaker, however, testified the gun had rust on it and looked "dirty and unoiled."

After he found the gun, Officer Hoagland asked appellant "if he had any weapons or dropped any weapons in the field." Although the officer did not use the word "handgun," appellant responded that he "'didn't have a handgun.'"

At the time he was taken into custody, appellant had a gray bandanna hanging out of the back pocket of his pants and he did not have gloves.

Valerie Maffei testified to the following. She is an "identification technician" employed by the Fresno Police Department, and her duties include "processing evidence for latent fingerprints, and doing fingerprint comparisons." In examining the gun found in the field she found no full fingerprints, partial fingerprints or "smudges." The gun was "clean." The barrel of the gun was made of a "particular metal" that is "not really conducive to leaving fingerprints." It is "possible" for a person to leave a fingerprint on that surface, but "not probable." The handle of the gun was made of metal and plastic. There is a "50/50 chance" of obtaining a fingerprint from that surface.

***Procedural Background***

Prior to the presentation of any evidence, and outside the presence of the jury, the defense moved, pursuant to Evidence Code section 352, to exclude evidence that the area where appellant was taken into custody was a "hot spot for ... members" of a particular criminal street gang, appellant's clothing was "representative of a criminal street gang" and appellant had "previous involvement" in a gang, on the grounds the evidence was "inflammatory and ... has no probative value." [FN3] The court stated it was inclined to exclude the evidence on undue prejudice grounds but would defer ruling until the evidence was presented, because the court could not intelligently rule on the matter unless it did so at a time when it was able to consider the evidence "in [the] context" of the "state of the evidence at the time an objection is made." The challenged evidence was not introduced at trial.

> FN3. Evidence Code section 352 provides, in relevant part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice...."

3

> Before the presentation of any evidence, the court instructed the jury: "You must decide what the facts are in this case. You must use only evidence that is presented in the courtroom or during a jury view, if any."
>
> The day after the trial ended, the court received a letter from a juror, in which the juror stated, "I feel the evidence was too circumstantial to say for sure [appellant] was guilty," and that he (the juror) "caved in...." The letter made no mention of any jurors saying anything relating to criminal street gangs.
>
> The defense filed a petition seeking the disclosure of juror-identifying information for the purpose of determining whether juror misconduct had occurred. The court denied the petition on various grounds, including that the letter "does not reveal any improper comments by the other jurors or any external factors that affected this juror's decision."
>
> Thereafter, the defense contacted and obtained declarations from three jurors, including the juror who wrote the letter to the court. The defense presented to the court an application to file, under seal, a motion for a new trial, along with the three declarations. At subsequent hearings, both the defense and prosecution, in response to a question from the court, indicated they did not wish to seek additional juror contact information. The court granted the defense application.
>
> On November 15, 2007, the defense filed a notice of motion for new trial, along with the supporting juror declarations. The juror who wrote the letter (Juror 1) stated in his [FN4] declaration that one of the other jurors, whom he identified only by gender and ethnicity, told the other jury members that he was "familiar with the area of town where [appellant] was arrested"; "a gray rag is a gang-related item"; and "the gray rag is typically used to hide or wipe off fingerprints when a gun [is] used." Another juror (Juror 2) stated in his or her declaration that another juror, identified in the same manner as in Juror 1's declaration, said "he was familiar with that area where [appellant] was arrested" and "mentioned that gray is a gang color and the bandanna is typically used to hide or wipe fingerprints off a gun." The third juror (Juror 3) stated in his or her declaration, the following: "Someone said [appellant] was probably a gang member because he had a rag," and one of the jurors, identified in the same manner as in the other two declarations, told the other members of the jury that "he has lived in that area where the incident happened"; the area is a "known gang area"; and "the rag is typically used to hide or wipe fingerprints off a gun."
>
> FN4. In a subsequent hearing, the trial court referred to the juror's letter as "his" letter.
>
> The trial court denied the motion for a new trial. The court ruled that the three juror declarations were admissible in the proceeding to determine whether a new trial should be granted, and that the declarations established that one juror made remarks to other jurors relating to gangs. However, the court found these remarks were "not evidence, but merely general conversation"; did not constitute misconduct; and "even if this discussion rose to the level of misconduct, it's clearly not prejudicial."

(See Resp't's Answer Ex. D.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

4

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable

6

in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

III.   Review of Claim

Petitioner contends he was denied his constitutional right to a fair trial based on juror misconduct and juror bias. Petitioner presented this claim on direct appeal to the Fifth DCA and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In denying Petitioner's claim, the appellate court stated as follows:

> Appellant contends the three juror declarations established that one juror told the other jurors during deliberations that appellant was arrested in a gang area, the gray bandanna that appellant had in his possession was a gang-related item and gang members "typically" use such bandannas to wipe fingerprints off of guns. Appellant further contends that conveying this information to other jurors constituted prejudicial juror misconduct, and therefore the court erred in denying appellant's motion for a new trial.
>
> "A defendant accused of a crime has a constitutional right to a trial by unbiased, impartial jurors. [Citations.] A defendant is 'entitled to be tried by 12, not 11, impartial and unprejudiced jurors. "Because a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors [citation], it is settled that a conviction cannot stand if even a single juror has been improperly influenced." [Citations.]' " (*People v. Nesler* (1997) 16 Cal.4th 561, 578.)
>
> "Presentation to or reception by a jury of new evidence from sources outside the trial evidence constitutes misconduct." (*McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, 263.) Such juror misconduct "leads to a presumption that the defendant was prejudiced thereby and may establish juror bias. [Citations.] ... 'In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of

confrontation, of cross-examination, and of counsel.' [Citation.] As the United States Supreme Court has explained: 'Due process means a jury *capable and willing to decide the case solely on the evidence before it ....*' " (*People v. Nesler, supra,* 16 Cal.4th at p. 578.)

"If we conclude there was misconduct, we then consider whether the misconduct was prejudicial. This standard is well established. '[W]hen misconduct involves the receipt of information from extraneous sources, the effect of such receipt is judged by a review of the entire record, and may be found to be nonprejudicial. The verdict will be set aside only if there appears a substantial likelihood of juror bias. Such bias can appear in two different ways.'" (*People v. Danks* (2004) 32 Cal.4th 269, 303.)

"'First, we will find bias if the extraneous material, judged objectively, is inherently and substantially likely to have influenced the juror.' [Citation.] 'Under this standard, a finding of "inherently" likely bias is required when, but only when, the extraneous information was so prejudicial in context that its erroneous introduction in the trial itself would have warranted reversal of the judgment. Application of this "inherent prejudice" test obviously depends upon a review of the trial record to determine the prejudicial effect of the extraneous information.'" (*People v. Danks, supra,* 32 Cal.4th at p. 303.)

Second, under what is sometimes referred to as the "'circumstantial' test," (*In re Carpenter* (1995) 9 Cal.4th 634, 654), "'even if the extraneous information was not so prejudicial, in and of itself, as to cause "inherent" bias under the first test,' the nature of the misconduct and the 'totality of the circumstances surrounding the misconduct must still be examined to determine objectively whether a substantial likelihood of actual bias nonetheless arose'" (*People v. Danks, supra,* 32 Cal.4th at p. 303). Actual bias occurs where a juror is "unable to put aside [his or] her impressions or opinions based upon the extrajudicial information [he or] she received and to render a verdict based solely upon the evidence received at trial." (*People v. Nesler, supra,* 16 Cal.4th at p. 583.) Under this second test, "'"The presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, *upon examining the entire record,* that there is no substantial likelihood that the complaining party suffered actual"' bias." (*People v. Danks, supra,* 32 Cal.4th at p. 303.)

In applying the circumstantial test to an extraneous-information case, "the 'entire record' logically bearing on a circumstantial finding of likely bias includes the nature of the juror's conduct, the circumstances under which the information was obtained, the instructions the jury received, the nature of the evidence and issues at trial, and the strength of the evidence against the defendant. For example, the stronger the evidence, the less likely it is that the extraneous information itself influenced the verdict." (*In re Carpenter, supra,* 9 Cal.4th at p. 654.)

"'The judgment must be set aside if the court finds prejudice under either test.' [Citation.] 'Whether prejudice arose from juror misconduct ... is a mixed question of law and fact subject to an appellate court's independent determination.' [Citation.] However, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.'" (*People v. Danks, supra,* 32 Cal.4th at p. 303-304)

Our Supreme Court has "emphasize[d] that before a unanimous verdict is set aside, the likelihood of bias under either test must be *substantial* .... [T]he criminal justice system must not be rendered impotent in quest of an ever-elusive perfection. The jury system is fundamentally human, which is both a strength and a weakness. [Citation.] Jurors are not automatons. They are imbued with human frailties as well as virtues. If the

system is to function at all, we must tolerate a certain amount of imperfection short of actual bias. To demand theoretical perfection from every juror during the course of a trial is unrealistic." (*In re Carpenter, supra,* 9 Cal.4th at pp. 654-655.)

We first address the question of whether juror misconduct occurred. We accept the trial court's factual finding that a juror made the remarks reported in the declarations. However, we disagree with the court's conclusion that these remarks did not constitute misconduct. There was no evidence introduced at trial that appellant was in any way connected with a criminal street gang. By stating during deliberations that appellant was apprehended in a gang area, that he had a gang-related bandanna in his possession and that such items are used by gang members to wipe fingerprints off of guns, one juror injected into the case information not adduced as evidence at trial that was damaging to appellant.

The remaining question is whether the misconduct was prejudicial. On this question, appellant first argues the gang-related information disclosed to the jury during deliberations was inherently prejudicial. We disagree. We agree with appellant that the obvious inference of that information was that appellant was affiliated with a gang and that such information can have a "highly inflammatory impact." (*People v. Cox* (1991) 53 Cal.3d 618, 660 .) On the other hand, the evidence against appellant was strong. As indicated above, there was evidence of the following: although neither officer saw appellant place the handgun on the ground, one officer testified that when appellant dropped to one knee it "appeared" appellant was discarding an item and the other officer testified appellant's action were "consistent with" discarding contraband; the gun was found approximately two minutes after, and in the same area where, it appeared appellant discarded something, and although the grass in the area was moist, the gun was dry; and in response to a question as to whether he had any weapons, appellant told Officer Hoagland he did not have a handgun, even though the officer did not use the word "handgun" in posing the question. On this record, given the compelling evidence of appellant's guilt, it cannot be said that had the gang-related information been erroneously admitted, it is reasonably probable appellant would not have been convicted absent the erroneous admission of the evidence. Therefore, the erroneous admission into evidence of that information would not have necessitated reversal. (*People v. Page* (2008) 44 Cal.4th 1, 41-42 [evidentiary error not prejudicial unless it is reasonably probable defendant would have achieved a more favorable result absent the error].) And, as indicated above, in an extraneous-information instance of juror misconduct, such information is deemed inherently likely to cause bias only if its introduction into evidence would have warranted reversal of the judgment. (*People v. Danks, supra,* 32 Cal.4th at p. 303.) Accordingly, we conclude the juror misconduct in the instant case was not inherently prejudicial.

Appellant also argues that reversal is required under the circumstantial test. He asserts that there is a substantial likelihood that one or more of the jurors who heard the improper remarks were actually biased "because [those remarks] concerned a controversial issue at appellant's trial-the absence of appellant's fingerprints on the gun," and "improperly undermined a crucial aspect of the defense." Again, we disagree. In applying the circumstantial test we consider, inter alia, the strength of the case against appellant, and as demonstrated above, the record contains compelling evidence of appellant's guilt. Moreover, appellant's suggestion that the extraneous gang-related information was particularly damning, and therefore substantially likely to have influenced the jury, is undercut by the presence of two other factors, which also militate in favor of conviction, that the jury could *properly* consider in determining why there were no fingerprints on the gun: (1) the commonsense notion that not only gang members would think to wipe fingerprints off of a gun, and (2) the evidence that given the plastic and metal surfaces of the gun, even if the gun had not been wiped clean, the likelihood of being able to obtain fingerprints was no better than fifty percent. Although it is possible,

9

> on this record, that one or more members of the jury were unable to ignore the extrajudicial gang information and decide the case based solely on the evidence, in our view it is not substantially likely.
>
> Finally, appellant argues that even if the other jurors were unaffected by the extraneous information, the fact that the juror who disclosed the information took the trouble to do so establishes that *that juror* was actually biased. On this point too, we disagree.
>
> Appellant bases this contention chiefly on *People v. Nesler, supra,* 16 Cal.4th 561. The defendant in that case was charged with killing the alleged molester of her young son. (*Id.* at p. 565.) The impact of possible methamphetamine use on the defendant's mental status was an issue at trial. The misconduct occurred when one juror revealed to the other jurors damaging information that she overheard in a bar regarding the defendant's sale and use of methamphetamine. (*Id.* at pp. 570, 579.) The evidence presented in the trial court showed that the juror referred *repeatedly* to the damaging information and used it to persuade other jurors with whom she disagreed. (*Id.* at p. 583.) The Supreme Court thus concluded:
>
> "In our view, [the juror's] *repeated references to and use of the outside information* during deliberations establish a substantial likelihood that her extraneous knowledge concerning defendant caused her to prejudge issues that arose during deliberations and to render a verdict that was not based solely upon the evidence presented in court. As defendant points out, if [the juror] had not been influenced by what she had learned, she would not have used the information to attempt to convince other jurors that defendant truly was a bad mother and more involved with drugs than the evidence showed." (*People v. Nesler, supra,* 16 Cal.4th at p. 583, italics added.)
>
> Here, on the other hand, there was no evidence that the juror who disclosed the gang-related information made more than one reference to that information or used it to convince other jurors of appellant's guilt. We recognize that the *Nesler* court stated, "A juror's disclosure of extraneous information to other jurors tends to demonstrate that the juror intended the forbidden information to influence the verdict and strengthens the likelihood of bias." (*People v. Nesler, supra,* 16 Cal.4th at p. 587.) "However, that circumstance alone is not dispositive on the issue of 'actual' bias. If it were, the interjection of outside information into deliberations would always require invalidation of the jury's verdict. Obviously this cannot be, and is not, the law." (*People v. Nesler, supra,* 16 Cal.4th at p. 598 (dis. opn. of Baxter, J.).)
>
> We reiterate that the evidence against appellant was compelling. When we apply the circumstantial test, we conclude that notwithstanding what, insofar as the record reveals, was a single instance of a juror interjecting extraneous information into deliberations, the record does not establish a substantial likelihood of actual bias on the part of that juror.

(See Resp't's Answer Ex. D.)

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial . . . by an impartial jury," U.S. Const. amends. VI and XIV; see Duncan v. Louisiana, 391 U.S. 145 (1968).  The right to a trial by an impartial jury lies at the very heart of due process. Irvin v. Dowd, 366 U.S. 717, 721-722 (1961).  In reviewing a claim of juror misconduct, "[t]he

10

test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.), *cert. denied*, 419 U.S. 835 (1974).

As set forth above, in this case the appellate court determined juror misconduct occurred. One juror introduced evidence to the panel that had not been admitted at trial, specifically, that Petitioner was apprehended in a gang area, that the grey rag he carried was gang-related, and that such rags are customarily used by gang members to wipe off fingerprints. Assuming that the juror's behavior was constitutionally cognizable misconduct, see Turner v. Louisiana, 379 U.S. 466 (1965), the question is then whether the misconduct had a "substantial and injurious effect" on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623, 631 (1993); see Fry v. Pliler, 551 U.S. 112 (2007) (holding that federal habeas review of constitutional error in state-court trial is reviewed under Brecht, regardless of whether state court recognized the error and reviewed under Chapman on direct appeal); Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir.2005). The Court is mindful of the fact that factual findings arising out of the state courts' post-trial hearings are entitled to a presumption of correctness. See 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539 (1981); Wainwright v. Witt, 469 U.S. 412, 426-430 (1985). Thus, they must be determined, in the first instance, by state courts and deferred to, in the absence of "convincing evidence" to the contrary, by the federal courts. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Here, both the state's trial and appellate courts concluded that the juror's misconduct was not prejudicial. This finding of "fact" - on a question the state courts were in a far better position than the federal courts to answer - deserves a "high measure of deference," Sumner, 455 U.S. at 598, and may be set aside only if it "lack[s] even 'fair support' in the record." Marshall, 459 U.S. at 432.

In this case, the trial court conducted a hearing into the misconduct and determined there was no prejudice. The appellate court reviewed the trial court's ruling and also concluded that Petitioner was not prejudiced in light of the compelling evidence of Petitioner's guilt. The appellate court noted that one of the officers who gave chase witnessed Petitioner drop to one knee and "appear[]" to discard an item, while the other officer testified that Petitioner's actions

were "consistent with" discarding contraband.  The gun was found two minutes later during a search of the immediate area where Petitioner had kneeled down.  Although the grassy area was wet, the gun was dry.  When Petitioner was questioned whether he had any weapons, he responded that he did not have a "handgun" even though the officer never used the term "handgun."  The state court determination that there was compelling evidence of guilt is well-supported.  The state court conclusion that the misconduct did not prejudice Petitioner is reasonable.  Given the state of the evidence, the misconduct could not have had a substantial and injurious effect on the jury's verdict.  The Supreme Court has stated that the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation ... [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982).  Petitioner's claim should be denied.

In addition, Petitioner fails to establish that the juror in question was biased.  The state courts determined that the juror was not biased and this finding is presumed to be correct. 28 U.S.C. § 2254(d); Wainwright, 469 U.S. at 426-430.  The juror in question made the comments described above, but that was the extent of his improper communication.  There is no evidence he attempted to convince the other jurors based on this information, or that he harbored any bias against Petitioner based on the information.  In addition, as previously discussed, the evidence against Petitioner was very strong.  The state court's determination was not contrary to or an unreasonable application of Supreme Court law.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

   IT IS SO ORDERED.

   Dated:   **October 6, 2010**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE